IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **C.W.**, a minor and<br>**J.B.**, individually and as<br>  next friend of **C.W.** ,<br><br>  Plaintiffs,<br><br>v.<br><br>**BOARD OF EDUCATION OF THE<br>CITY OF CHICAGO,<br>SCHOOL DISTRICT 299**,<br><br>  Defendant. | No.<br><br>Judge |

## PLAINTIFFS' COMPLAINT

NOW COME C.W., a minor, and J.B., in his own capacity and as a foster parent and next friend of C.W., by their attorneys Ashley Fretthold and Richard Cozzola of LAF, and as their complaint, state as follows:

## PRELIMINARY STATEMENT

1. C.W.[1] prevailed against Defendant Board of Education of the City of Chicago, Public School District 299, in a due process proceeding conducted pursuant to

---

[1] Pursuant to Federal Rule of Civil Procedure 5.2, C.W.'s initials are provided in lieu of her full name, as she is a minor. *See* Fed. R. Civ. Pro. 5.2(a)(3); *S.F. v. Archer Daniels Midland Co.*, 594 Fed. Appx. 11, 12 (2d Cir. 2014) (under Rule 5.2(a)(3), "only a minor's initials should be used in publicly filed documents"). C.W.'s foster parent, J.B., is also referred to by his initials to protect C.W. *See id.* (noting rule that minor's initials be used "extends to the child's parents"); see also 20 U.S.C. § 1417(c) (state and local educational agencies must ensure the confidentiality of any personally identifiable data, information, and records collected or maintained by such agencies).

the Individuals with Disabilities Education Act. *See* 20 U.S.C.A. § 1415(f). As a result, Plaintiffs are entitled to payment of attorneys' fees, which Defendant has failed to pay.

## JURISDICTION

2. This Court has jurisdiction over this matter pursuant to 20 U.S.C.A. § 1415(i)(3) and 28 U.S.C.A. § 1331. Venue is properly located in this District.

## PARTIES

3. C.W. is a fifteen-year-old "youth in care" in the guardianship of Janet Ahern, the Guardianship Administrator of the Illinois Department of Children and Family Services. On August 10 and 17, 2017, C.W. substantially prevailed against Defendant following a four-day due process hearing held pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C.A. § 1415(f).[2] *See* Exhibit A, Final Determination and Order, August 10, 2017; Exhibit B, Clarification of Final Determination and Order, August 17, 2017.[3]

4. J.B. is C.W.'s current foster parent and, as such, is C.W.'s "parent" within the meaning of IDEA. *See* 20 U.S.C.A. § 1401(23)(D); 34 C.F.R. § 300.30; 34 C.F.R. § 300.519. J.B. brings this action on his own behalf as C.W.'s "parent" within the meaning of IDEA, as next friend of C.W., and as the prevailing party in the administrative process.

---

[2] This due process hearing was requested on behalf of C.W. by her educational surrogate parent at the time, J.M. As the educational surrogate parent, J.M. was C.W.'s "parent" within the meaning of IDEA at that time. After the hearing officer's decision, C.W. moved into the home of her foster parent, J.B. Therefore, J.M. is no longer her educational surrogate parent.

[3] Exhibits A and B have been redacted to remove C.W.'s date of birth, mental health diagnoses, the hearing officer's address, phone number, fax, and email address, as well as the attorneys' phone numbers and email addresses.

5. Defendant Board of Education of the City of Chicago, Public School District 299 (also referred to as "CPS"), is the Local Education Agency ("LEA") as defined in 20 U.S.C.A. § 1401(19). As such, CPS is responsible for ensuring the provision of free and appropriate public education ("FAPE") to children with disabilities. *See* 34 C.F.R § 300.1-2.

## FACTS

6. C.W. is a fifteen-year-old child who has resided with J.B. and S.B., her foster parents, since on or about November 15, 2017. At the time of the due process hearing and during all relevant times before that, C.W. resided at Lydia Home, a residential treatment center on the North Side of Chicago.

7. C.W. attended Thurgood Marshall Middle School ("TMMS"), one of Defendant's schools, beginning in September 2015.

8. C.W. has a significant history of trauma and several diagnoses of social/emotional and mental health conditions.

9. During the 2015-2016 school year C.W. demonstrated behavioral issues, which escalated during the fall of 2015.

10. Due to these severe behaviors, the Defendant evaluated C.W. to determine eligibility for special education services. C.W. was found eligible for special education services on December 2, 2015 based on the eligibility categories of Emotional Disturbance and Other Health Impairment.

11. The individualized education program (" IEP") written on December 2, 2015, by the IEP team indicated that C.W. would have a behavior intervention plan ("BIP"), a safety plan, 20 minutes per week of direct school social work services, and a

3

dedicated (one-on-one) paraprofessional aide. The IEP and safety plan specified that C.W. was not allowed to be unsupervised at any time.

12. Part B of the IDEA requires states that accept federal funds to provide FAPE to eligible children with disabilities who are between the ages of 3 and 21. 20 U.S.C.A. § 1412(a)(1)(A).

13. A school district is required to provide special education and related services to a child with a disability in accordance with the child's IEP. 34 C.F.R. § 300.323(c).

14. In order for a school district to meet its obligation under IDEA, it must offer an IEP reasonably calculated to enable a student to make progress appropriate in light of the student's unique circumstances. *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 992 (2017).

15. The Defendant failed to provide services in accordance with C.W.'s IEP, and her IEP was not reasonably calculated to enable C.W. to make appropriate progress in light of her circumstances.

16. After the December 2, 2015 IEP meeting, a dedicated paraprofessional was hired for only three days (total) in early February 2016. This individual did not continue as a paraprofessional for C.W. and CPS did not provide another dedicated paraprofessional before or after those dates.

17. The Defendant failed to hire a new dedicated paraprofessional for C.W. and instead had various staff members occasionally provide paraprofessional support. However, these individuals had other responsibilities at TMMS and were not dedicated to addressing the needs of C.W., nor were they specifically trained to work with the student to meet her unique needs as described in the IEP.

18. This failure to provide a dedicated paraprofessional had adverse consequences for C.W., including that the behaviors outlined in her IEP, BIP, and safety plan not only continued but worsened.

19. On May 10, 2016, C.W. left the TMMS building unnoticed and was missing for three days. She was able to leave unnoticed, because she did not have a dedicated paraprofessional with her as required by her IEP. This elopement incident endangered C.W. and caused her additional trauma. After she was located and returned to Lydia Home, C.W. did not return to TMMS because TMMS was unable to ensure that C.W.'s safety plan would be followed. Further, the Defendant failed to offer an alternative school placement at that time.

20. After this incident, on May 25, 2016, an IEP meeting was convened to discuss revisions to C.W.'s IEP. The meeting was not completed because the complexity of the issues required additional time. The meeting resumed on June 8, 2016. On that date, the IEP team changed C.W.'s placement to a 100% special education placement at a therapeutic separate day school at Jewish Children and Family Services Therapeutic Day School ("JCFS"). The IEP team also increased C.W.'s school social work services from 20 to 45 minutes per week and recommended extended school year ("ESY") services.

21. On June 6, 2016, counsel for C.W. filed a State Complaint with the Illinois State Board of Education ("ISBE"), pursuant to 34 C.F.R. § 300.151-3. The complaint alleged that CPS had failed to implement C.W.'s IEP by failing to provide a dedicated paraprofessional. ISBE initiated an investigation and on August 5, 2016, ISBE found CPS in violation of the IDEA. ISBE ordered CPS to convene an IEP team meeting to discuss compensatory educational services.

22. On September 26, 2016, an IEP team meeting was held at JCFS; however, no agreement was ever reached and CPS did not provide compensatory educational services.

23. On February 21, 2017, counsel for C.W. filed a Request for a Due Process Hearing on behalf of C.W., seeking a hearing to show that the Defendant failed to provide a free and appropriate public education between December 2015 and June 2016 because (1) the Defendant failed to implement material portions of C.W.'s IEP, resulting in a denial of FAPE, and (2) the IEP did not include appropriate services, resulting in a denial of FAPE. The Due Process Hearing Request sought compensatory services for C.W. for violations of FAPE between December 2015 and June 2016.

24. The filing was designated as Illinois State Board of Education Case Number 2017-0282. ISBE appointed Philip C. Milsk to be the Hearing Officer.

25. The due process hearing took place over four days in July 2017, and the Hearing Officer issued his decision on August 10, 2017. (Exhibit A.) After requests for clarification from both parties, the Hearing Officer issued his final decision, with clarifications, on August 17, 2017. (Exhibit B.)

26. The Hearing Officer ruled in favor of C.W. on all substantive issues:

    A. The Hearing Officer found that C.W. "was denied the services of a dedicated paraprofessional required by her IEP" and "the paraprofessional was an essential element of the Student's IEP that was necessary for the Student to receive FAPE." The "failure to provide a dedicated paraprofessional for the Student was a significant cause of the escalation of her inappropriate behaviors during 2015- 2016" and C.W. "lost educational benefit because her behaviors worsened." The "failure to

provide the dedicated paraprofessional denied FAPE to [C.W.]." (Exh. A at 8-9).

B. The Hearing Officer also found that C.W.'s social work services were not appropriate. He found that her required minutes were not fully implemented: "225 minutes were provided . . . compared to 360 minutes that should have been provided over the 18 week period." He also found that 20 minutes per week was not an appropriate level to meet C.W.'s needs to begin with: "[g]iven [C.W.'s] severe behavioral and social and emotional needs and her need for consistency and stability, it would seem that more frequent encounters with the social worker would have been more appropriate to meet her needs." This resulted in a finding that C.W. "was not provided FAPE." (Exh. A at 9-10)

27. Defendant has not appealed the Hearing Officer's decision.

28. From January 10, 2017 to the present date, LAF staff have expended considerable time preparing the due process complaint, preparing for and representing client in the due process hearing, and, following the hearing, ensuring compliance with the Hearing Officer's order. The hearing lasted four days and involved approximately 750 pages of documents and testimony from 10 witnesses. The time incurred following the hearing includes, but is not limited to, time spent drafting the request for clarification, assisting with locating and arranging compensatory educational services for C.W., and facilitating payment to providers for compensatory educational services ordered by the Hearing Officer. LAF has dedicated approximately 400 hours to litigating this matter.

29. On March 26, 2018, C.W. and J.B., through their attorneys, submitted a claim for attorney fees to Defendant. The total amount claimed for representation in the due process hearing through the date of February 5, 2018 was $103,435.00. Discussions with Defendant have not resolved the attorneys' fees issue.

30. Since February 5, 2018, Plaintiffs' attorneys' have subsequently expended more time preparing this complaint for attorneys' fees. Plaintiffs' attorneys' have also subsequently incurred a $400 filing fee in the filing of this complaint.

31. Defendant has failed to pay Plaintiffs, C.W. and J.B., the amount of fees reasonably incurred in the due process proceeding.

**CLAIM FOR RELIEF: ATTORNEYS FEES UNDER 20 U.S.C. § 1415(i)(3)(B)**

32. As a result of the August 10 and 17, 2017 decisions regarding C.W.'s Due Process Hearing Request, Plaintiffs are the prevailing party against Defendant pursuant to 20 U.S.C. § 1415(i)(3)(B).

33. Defendant's behavior was modified by the Hearing Officer's order that Defendant provide C.W. with the following:

> A. Pay for the services of a private qualified mental health professional for the 2017-2018 school year in the amount of (1) one sixty-minute direct therapy session with the Student per week, including weeks during the school year when the Student's school district is not in session, (2) sixty minutes per month of consultation with her school social worker, teachers and other appropriate school staff to be arranged between the mental health professional and school personnel, and (3) provide transportation for the Student to and from the private mental health therapy sessions or

reimburse the Student's caretakers for their mileage costs in accordance with the Defendant's mileage reimbursement policy.

B. Provide funding not to exceed $1,000 for the Student's participation in one organized extracurricular program or activity during the 2017-2018 academic year.

34. As the prevailing party, Plaintiffs are entitled to reasonable attorneys' fees as part of the costs of litigation, pursuant to 20 U.S.C. § 1415(i)(3)(B).

35. Plaintiffs' attorneys' hourly rates are consistent with the rates prevailing in the community for the kind and quality of services furnished, as required by 20 U.S.C.A. § 1415(i)(3)(C). The fee structure at LAF is based on years of experience in the staff member's current position, and is comparable to attorneys working in the Chicago area in the special education field.

36. The time expended and billed by Plaintiffs' attorneys in the due process hearing and following the due process hearing to ensure compliance with the Hearing Officer's decision is reasonable and consistent with the overall results obtained, and is therefore compensable under 20 U.S.C.A. § 1415(i)(3). Furthermore, Plaintiffs are only seeking reimbursement for time billed by their attorneys and staff beginning with the drafting of the due process complaint, preparing for and participation in the due process hearing, clarifying and implementing the Hearing Officer's decision, and for the preparation and prosecution of this complaint.

## **RELIEF**

**WHEREFORE,** J.B., on his own behalf and as foster parent and next friend of C.W., prays that this Court:

A. Find that Plaintiffs are the prevailing parties in their administrative proceeding against Defendant pursuant to 20 U.S.C.A. § 1415(i)(3);

B. Award attorneys' fees and costs in the amount of $105,885.00 for fees and costs incurred in prevailing in the administrative proceeding filed by Plaintiffs, and in filing and prosecuting this complaint;

C. Award prejudgment interest; and

E. Grant any other relief as this court deems just.

Respectfully Submitted,

/s/ Ashley B. Fretthold

Ashley Fretthold
ARDC ID # 6296529
Richard T. Cozzola
ARDC ID #3127004
LAF (Legal Assistance Foundation)
120 S. LaSalle St., Suite 900
Chicago, IL 60603
Phone: 312-229-6312